IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| CHRIS CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-05034-SSA-CV-SW-NKL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Chris Campbell filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The Administrative Law Judge (ALJ) denied his application. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a final decision of the Commissioner of the Social Security Administration under Title II. Plaintiff seeks this Court's review of the ALJ's decision. For the reasons set forth below, the Court affirms the ALJ's decision.[1]

## I. BACKGROUND

On November 6, 2012, Plaintiff filed a claim for disability insurance (Title II) benefits pursuant to the Social Security Act, alleging disability beginning June 20, 2012. Doc. 6, Administrative Record, pgs. 320-27. This application was denied initially on December 21, 2012, and Plaintiff subsequently filed a request for a hearing. *Id.* at pgs. 136-40, 142-43. A hearing was held on August 5, 2014, and the ALJ issued an unfavorable decision on October 1, 2014. *Id.* at pgs. 113-131. Plaintiff requested review of the ALJ's unfavorable decision by the Appeals Council. *Id.* at pg. 133. The Appeals Council remanded the case to the ALJ for a second hearing. *Id.* at pg. 134. The second hearing was held on October 27, 2016, and the ALJ issued an

---

[1] Plaintiff's arguments in support of this appeal were carefully and fully considered. Any arguments that are not specifically discussed in this order have been considered and determined to be without merit. This Court finds there is substantial evidence in the record to support the decision of the ALJ.

unfavorable decision on February 23, 2017. *Id.* at pgs. 15-105. Plaintiff again filed a request for review of the ALJ's decision by the Appeals Council, but this request was denied. Therefore, Plaintiff has exhausted all administrative remedies.

To be eligible for disability benefits under Title II, Plaintiff must show that he was disabled prior to the expiration of his insured status. Plaintiff's insured status expired on December 31, 2014.

Plaintiff was born in July 1972, and was thirty-nine years of age on the date he asserts he became disabled, and was forty-two years of age on the date of his last insured status. Plaintiff has a high school diploma. *Id.* at pg. 87. Plaintiff's earning records show that he last worked in 2009, when his earnings were less than $5,000.00. *Id.* at pgs. 328-356 (earnings records). However, the record indicates Plaintiff was working as a laborer/construction at the time he alleges he became disabled on June 20, 2012. *Id.* at pgs. 110, 361-62. The record shows Plaintiff has a work history which includes employment as welder, machine operator, factory worker, and laborer/construction. *Id.* at pgs. 361-62. Plaintiff stated on his application for disability that he became disabled due to back problems, specifically he asserts he has protruding discs and bone spurs. *Id.* at pg. 361. Plaintiff also indicated on his application seeking disability, that the only medication he was taking for his disabling back pain was a muscle relaxer. *Id.* at pg. 363.

In the months just before Plaintiff filed for disability, his medical records show he was seen at Westlake Medical Center by Dr. Robbins. In August of 2012, Plaintiff was seen by Dr. Robbins at which time his reported chief reason for being seen was back pain. *Id.* at pg. 448. Plaintiff advised Dr. Robbins that he had a history of back injury, stating that in 1995 he fell off a mule. *Id.* Dr. Robbins's examination of Plaintiff indicated: a fairly good range of motion in Plaintiff's lower back; 80% of expected range of motion in Plaintiff's cervical spine; straight leg raise was negative; L4-S1 strength was intact; upper extremity strength was noted to be 5/5 and equal; Plaintiff had no palpable tenderness but did have a little soreness in the paraspinal musculature; x-rays of cervical spine showed no obvious fractures, misalignments or disc narrowing; x-rays of the lumbar spine showed normal alignment, with no obvious listhesis, and no other abnormalities. *Id.* Dr. Robbins stated that it was difficult to discern the pain generators based on her exam of Plaintiff and his essentially normal imaging. *Id.* In light of the unremarkable exam and x-ray, but assertions by Plaintiff of prior back injury and some extremity radiculopathy, Dr. Robbins referred Plaintiff to an orthopedic specialist for MRI imaging and an exam. *Id.* Dr. Robbins stated that if the results

of MRI didn't show significant pathology she would recommend physical therapy. *Id.* Dr. Robbins indicated that Plaintiff was currently taking Flexeril (a muscle relaxant) and hydrocodone as needed for pain. *Id.*

Plaintiff subsequently had MRI scans of his back and neck completed at Columbia Orthopedic Group. The imaging of Plaintiff's cervical and lumbar spine were interpreted by Dr. Monroe of Columbia Orthopedic Group. The impressions given by Dr. Monroe stated that Plaintiff had cervical spondylosis with protrusions at C3-C4, C5-C6, and C6-C7, and annular tears with protrusions at L5-S1, L4-L5, L3-L4, and L2-L3. *Id.* at pgs. 449-450. Plaintiff was examined by Dr. Jason Koreckij of Columbia Orthopedic group. *Id.* at pg. 451. Plaintiff's chief complaints were listed as neck pain, arm numbness, low back pain and periodic leg numbness. *Id.* Plaintiff reported only taking Flexeril for his pain. *Id.* Dr. Koreckij noted this was the first time Plaintiff had been seen at Columbia Orthopedic Group for these complaints. *Id.* The exam findings of Dr. Koreckij stated that Plaintiff had a decrease in range of motion in his low back and cervical spine due to pain; had tenderness to palpitation in his prevertebral muscles; was able to walk heel to toe; had a normal gait; and had motor skills which were intact in his lower and upper extremities. *Id.* at pgs. 451-452. Based on the exam and review of the MRI images, Dr. Koreckij assessed Plaintiff with lumbar and cervical degenerative disc disease, low back pain, and cervical lumbar radiculopathy. *Id.* at pg. 452. Dr. Koreckij specifically stated the following as to Plaintiff's multiple complaints and the plan for treatment:

> Mr. Campbell has multiple complaints today. Somewhat vague regarding his current history. At present he has not tried anything conservative and as such, we will get him started on therapy for both the neck and the back. I recommended ibuprofen and continuing his muscle relaxant. We will see him back in the office on a PRN basis if he would like to entertain further therapy such as shots or considering surgical intervention. He knows to call sooner with any worsening pain or change in neurologic status.

*Id.* at pg. 452.

Columbia Orthopedic Group subsequently forwarded their records and assessments to Dr. Robbins. *Id.* at pg. 467.

In September of 2012, Plaintiff returned to Westlake Medical Center complaining of worsening back pain. Plaintiff told the doctor that he could only work a day or two and then he

3

has severe pain. *Id.* at 462. He further advised that he would be filing for disability, and that the orthopedic surgeons told him surgery would not help him. Plaintiff stated he had just started on a six-week course of physical therapy as prescribed by Dr. Koreckij. The exam records for this appointment show Plaintiff was noted as having tenderness in cervical and lumbar spine and was continued on a muscle relaxant (Flexeril) for his back pain.

Also in September of 2012, the records indicate Plaintiff had an interview with the social security administration field office regarding his protective filing a claim for social security disability. *Id.* at pgs. 318, 320. Plaintiff filed his claim for disability on November 6, 2012. *Id.* at pg. 321.

A function report filled out in November of 2012, by Plaintiff's wife, on behalf of Plaintiff, stated that at the time Plaintiff filed his application for disability his daily activities included household chores such as cleaning up dishes or vacuuming, and if he was feeling better, fixing dinner a few times a week. *Id.* at pgs. 384-390. Plaintiff also reported attempting to mow the yard, and shopping for groceries on a biweekly basis for about 60 minutes each time. Plaintiff was noted as able to do some of his hobbies of walking, hunting and fishing when he was feeling well enough.

After Plaintiff filed his application for Social Security Disability benefits the agency referred Plaintiff's medical records to Dr. Judith Vogelsang for review and assessment of Plaintiff's medical impairments and his corresponding level of functioning. Dr. Judith Vogelsang reviewed Plaintiff's medical records on December 20, 2012, as a non-examining consultative medical expert for the social security administration. She reviewed Plaintiff's records from Dr. Robbins and Westlake Medical Center as well from the Columbia Orthopedic Group. Dr. Vogelsang submitted a Physical Residual Functional Capacity Assessment, including a narrative supporting the basis for her findings. *Id.* at pgs. 476-482. Dr. Vogelsang primary diagnosis of Plaintiff was "DDD (degenerative disc disease) of the C spine with some radicular pain preserved strength." *Id.* at pg. 476. Dr. Vogelsang's secondary diagnosis was "DDD of the L/S spine chronic pain, chronic myofascial type pain syndrome, tobacco." *Id.* Dr. Vogelsang opined that: Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk two hours in an eight hour workday, sit with normal breaks for a total of about six hours in an eight hour workday; Plaintiff was unlimited in his ability to push or pull including operation of hand/foot controls; Plaintiff could stand for about four hours in an eight hour workday with regular breaks; Plaintiff could frequently stoop; Plaintiff could occasionally climb stairs but never climb ladders,

4

rope or scaffolds; Plaintiff could occasionally kneel, crouch and crawl; Plaintiff was limited in his ability to reach in all directions, but was unlimited in his ability to handle, finger and feel; Plaintiff had no visual limitations; Plaintiff should avoid concentrated exposure to extreme cold and hazards such as machinery and heights, and avoid even moderate exposure to vibration; Plaintiff was unlimited in his ability to work in conditions involving heat, wetness, humidity, noise and odors. *Id.* at pgs. 476-479.

The next time Plaintiff was seen by Dr. Robbins for complaints of back or neck pain was January 2013. *Id.* at pg. 502. Dr. Robbins's treatment notes indicate Plaintiff stated that when he "was walking across [the] floor Saturday[,] [his] back went out." *Id.* Dr. Robbins prescribed Plaintiff "hydrocodone and SOMA [muscle relaxant] PRN [as needed] for pain." *Id.* at 503.

Plaintiff was seen by Dr. Robbins five months later in June of 2013. *Id.* at pgs. 511-13. The treatment records indicate Plaintiff continued to have complaints of back and neck pain, and also knee pain unspecified laterally. The only exam note regarding Plaintiff's back pain, apart from Plaintiff's self-reported complaints of pain was Dr. Robbins's statement that Plaintiff had tenderness in his lower back. *Id.* pgs. 511-512. Dr. Robbins course of treatment for Plaintiff included his continued use of a muscle relaxant and hydrocodone-acetaminophen for his pain. *Id.* pgs. 512-513.

The next time Plaintiff was seen by Dr. Robbins was July of 2014, at which time the records show Plaintiff was requesting a script for a cane and a walker and had also brought his paperwork for a handicap license plate and disability. *Id.* at pg. 509. Dr. Robbins prescribed Plaintiff a cane and a walker as requested, and also continued Plaintiff's prescriptions for a muscle relaxer and Tramadol for his complaints of chronic back, neck and knee pain. *Id.* at pg. 510. Dr. Robbins also filled out Plaintiff's paperwork for a handicap license plate and disability. The disability paperwork included a medical source statement by Dr. Robbins as to Plaintiff's symptoms and functional limitations. *Id.* at pgs. 505-507.

The medical source statement provided by Dr. Robbins assessed Plaintiff with disabling back, neck and knee pain. *Id.* Dr. Robbins stated Plaintiff required use of a cane when walking and opined that Plaintiff's back, neck and knee pain required substantial restrictions in his functioning. For example Dr. Robbins opined that Plaintiff could rarely lift/carry 10 pounds; could never twist, balance or climb; could rarely stoop, crouch or crawl; could rarely reach, handle, finger or feel; could only sit ten minutes at a time and less than two hours total; could only stand ten

minutes at a time and less than two hours total; required shifting of positions at will from sitting, standing or walking; would require unscheduled breaks of one to two hours during an eight hour workday; should elevate legs with prolonged sitting or standing at 45 to 90 degree angle for more than fifty-percent of an eight hour workday; would be off task or slower twenty-five percent of the day; was incapable of "low stress" work; and would miss work or leave early because of his conditions more than four days a month. *Id.* at pg. 575. Dr. Robbins's report did not cite to objective medical evidence in the record in support of the restrictions in functioning she assessed to Plaintiff.

The ALJ held a hearing on Plaintiff's claim of disability and subsequently issued his decision on February 23, 2017. *Id.* at pg. 18-82. The ALJ found that prior to his date last insured, December 31, 2014, Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spines with protrusions and annular tears, obesity, and neuropathy. *Id.* at pg. 20. The ALJ found that Plaintiff's additional impairments of hypertension, cellulitis and all other conditions mentioned in the file were non-severe as they did not cause more than minimal occasional relevant limitation and/or did not meet the twelve month durational requirement to be considered severe impairments.

After finding that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to those contained in 20 C.F.R. part 404, subpart P, appendix 1 (*Id.* at pg. 21), the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. 404.1567(b):

> In that he could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 4 hours in an 8 hour workday; sit 6 hours in an 8 hour workday; push and pull those same weights; never climb ladders, ropes, or scaffolding; occasionally climb ramps and stairs; occasionally balance and stoop; never kneel crouch, or crawl; never perform overhead work bilaterally; needed to avoid concentrated exposure to extreme cold and to hazards such as unprotected heights and dangerous moving machinery; needed to avoid moderate exposure to vibrations, including power tools; and needed to use a cane for ambulation.

*Id.* at pg. 21.

Relying on testimony from a vocational expert, the ALJ concluded that Plaintiff's impairments and corresponding RFC would preclude him from doing his past relevant work which

was performed at a heavy exertional level or a medium skilled or medium unskilled level. *Id.* at pg. 25. However, the ALJ further determined that Plaintiff's RFC would not preclude him from all other work. To reach this finding the ALJ first noted that as a younger individual, as defined by 20 C.F.R. 404.1563, and having a high school education, that Medical-Vocational Rules provide that the transferability of Plaintiff's job skills was immaterial to a determination of whether or not he is disabled. *Id. See* SSR 82-41 and 20 C.F.R. Par. 404, Subpart P, Appendix 2. Secondly, the ALJ elicited the testimony of a vocational expert who stated that based on Plaintiff's age, education, work experience and his RFC, as determined by the ALJ, Plaintiff could still perform light work jobs which existed in the national economy. *Id.* at pgs. 25-26. The vocational expert testified that Plaintiff would be able to perform the requirements of representative light, unskilled SVP2 occupations such as cashier, and office helper.

The ALJ determined that through the date last insured that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id.* at 25. The ALJ determined that Plaintiff was not under disability as defined by the Social Security Act at any time from June 20, 2012, the alleged onset date, through December 31, 2014, the date last insured.

## II. DISCUSSION

### A. Standard of review.

The Court must affirm the Commissioner's denial of social security benefits "if substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). The Court must consider both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (quotation marks and citation omitted). "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted).

### B. Evaluating the weight the ALJ gave to the differing medical opinions in the record.

Plaintiff makes one primary argument – "[t]he ALJ erred by failing to base the RFC on the substantial evidence in the record in that the ALJ relied on the outdated opinion of a non-examining

doctor to the exclusion of the opinion of the treating doctor." (Doc. 9, pg. 9). Upon review, the Court concludes that the weight that the ALJ gave the differing medical opinions in the record was proper and supported by substantial evidence in the record as a whole.

**1. No error by ALJ in giving little weight to treating physician's opinion.**

Plaintiff argues that the ALJ erred in giving little weight to the opinion of Plaintiff's treating physician Dr. Robbins. The Court disagrees. The ALJ properly gave little weight to the opinion of Dr. Robbins, Plaintiff's treating physician, because her opinion that Plaintiff's symptoms were disabling to Plaintiff was inconsistent with her own treatment notes and inconsistent with the record as a whole.

> A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. A treating physician's opinion does not automatically control, since the record must be evaluated as a whole. An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermined the credibility of such opinions.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citations omitted).

In evaluating plaintiff's treating physician Dr. Robbins's RFC assessment that was submitted in July of 2014, the ALJ determined that Dr. Robbins's own treatment records were void of any objective medical evidence to support the kind of severe limitations that she opined. Doc. 6, Administrative Record, pgs. 22-24. The ALJ noted that Dr. Robbins's treatment of Plaintiff consisted primarily of routine follow-up appointments and medication management and that this type of treatment is not indicative or supportive of Plaintiff having disabling medical conditions. *Id.* at pg. 23. The ALJ also pointed to Dr. Robbins's records showing that her objective testing and physical exams of Plaintiff did not indicate he suffered a significant degree of functional limitation from his medical impairments. *Id.* Dr. Robbins's own treatment notes show Plaintiff had unremarkable x-rays of which Dr. Robbins interpreted as showing no obvious fractures, misalignments, disc narrowing, or listhesis, and no other abnormalities. Dr. Robbins's treatment notes as to her physical exams of Plaintiff indicate that Plaintiff had tenderness in his cervical and lumbar spine, but that he continued to have a fairly good range of motion in his lower back, and

had an 80% range of motion of his cervical spine. Dr. Robbins's records specifically state that it was difficult for her to discern the pain generators based on her exam of Plaintiff and his essentially normal imagings, and therefore, she would refer Plaintiff to Columbia Orthopedic Group for further evaluation. *Id.* at pgs. 448, 462, 512. The records that Dr. Robbins's received back from Columbia Orthopedic Group included the MRI's done by Columbia Orthopedic Group and the medical assessment made by the orthopedic surgeons, including Dr. Koreckij. *Id.* at pg. 467. The assessment by Dr. Koreckij, a medical doctor specializing in orthopedics, was that Plaintiff suffered from lumbar and cervical degenerative disc disease, low back pain, and cervical lumbar radiculopathy. The records of Dr. Koreckij specifically stated that Plaintiff had not tried anything conservative for his complaints of pain and that Dr. Koreckij believed such conservative treatment was appropriate. Dr. Koreckij prescribed Plaintiff physical therapy and recommended Plaintiff use ibuprofen and his prescribed muscle relaxant for pain relief. Dr. Koreckij further indicated that if Plaintiff did not gain relief, he could consider further therapy in the future such as shots or surgical intervention. *Id.* at pg. 452. This assessment by Dr. Koreckij, which is found within Dr. Robbins's records, does not support the severe functional limitations that Dr. Robbins opined Plaintiff was suffering. Moreover, there is no evidence in the record that subsequent to Dr. Koreckij's assessment and recommendations, that Plaintiff sought any further treatment from Dr. Koreckij or any other orthopedic specialist, or even considered any of Dr. Koreckij's recommendations for pain relief should the physical therapy, ibuprofen and muscle relaxant not resolve Plaintiff's pain. Prior to the date last insured plaintiff sought no injections for pain relief, nor consultation as to his surgical options. In fact, the record shows that prior to even completing his prescribed six-week physical therapy, Plaintiff returned to Dr. Robbins and stated he was going to file for disability based on his back pain.

Furthermore, nowhere within Dr. Robbins's records is there any indication by the doctor, that her exams of Plaintiff were showing a worsening of his conditions or impairments. There is no evidence that Plaintiff's conditions became any more severe after they were first assessed by Dr. Robbins and by Columbia Orthopedic Group doctors in August of 2012. Dr. Robbins's only objective exam notations made after August 2012, and prior to Plaintiff's date last insured on December 31, 2014, were statements that Plaintiff continued to have tenderness in his cervical and lumbar spine. No further imaging or testing or other treatment or referral was done. Dr. Robbins's opinions as to Plaintiff's functional limitations appear to be based almost entirely on the subjective

complaints of Plaintiff and are not supported by medical evidence in her records or by the record as a whole. *See Reece v. Colvin*, 834 F.3d 904, 909-910 (8th Cir. 2016) (finding that Commissioner gave good reasons for discounting treating doctor's opinion where the opinion was inconsistent with the objective medical evidence in the record and seemed to be based on the claimant's subjective complaints rather than objective medical evidence). *See also Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (ALJ properly discounted doctor's report, in part, because it cited only limitations based on the claimant's subjective complaints and not his own findings); *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (*citing Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to discount an opinion where the opinion was based largely on the claimant's subjective complaints rather than on objective medical evidence)).

Moreover, Dr. Robbins's opinion was also inconsistent with the medical opinion of Dr. Vogelsang which was a part of the record as a whole reviewed by the ALJ. As discussed in a separate section below, the ALJ determined that the opinion of Dr. Vogelsang, M.D., was supported by better or more thorough medical evidence than that of Dr. Robbins. The Eighth Circuit has specifically upheld this as a basis for discounting or even disregarding the opinion of a treating physician. *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008).

Finally, the ALJ discussed how Plaintiff's functional report he submitted at the time he filed his application for disability was inconsistent with Dr. Robbins's opinion that Plaintiff had such severe functional limitations that he was fully disabled and unable able to work. Doc. 6, Administrative Record, pg. 29.

### 2. The ALJ did not substitute his own opinion for that of Dr. Robbins.

Plaintiff argues that when the ALJ gave little weight to the opinion of Dr. Robbins, he was improperly substituting his own opinion for that of Dr. Robbins. The Court disagrees. An ALJ's RFC need only be based on some medical evidence, and the ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *See Martise v. Astrue*, 641 F.3d 909, 923, 927 (8th Cir. 2011). Thus here, Plaintiff's argument lacks merit because although the ALJ gave little weight to the functional assessment of Dr. Robbins, he gave great weight to the functional assessment of Dr. Vogel, and used such assessment in formulating Plaintiff's RFC. Additionally, the ALJ discussed the other medical evidence in the record, including the treating notes of orthopedic specialist Dr. Koreckij, in support of Plaintiff's RFC and determination that Plaintiff could do light work. There is substantial

evidence in the record to support that the ALJ did not substitute his opinion for that of Dr. Robbins. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) ("In light of the medical evidence supporting the ALJ's determination, there is no warrant for a finding the he substituted his own opinion for these of the medical experts in concluding that [claimant] still retains significant functional ability").

### 3. No error by the ALJ in giving great weight to consultative medical opinion of Dr. Vogelsang.

Plaintiff argues that the ALJ erred in giving great weight to the non-examining consultative physician, Dr. Vogelsang. The Court disagrees. Dr. Vogelsang's opinion was properly given great weight by the ALJ because it was well supported by the objective medical evidence in the record and the record as a whole. While typically medical opinions from treating sources are entitled to greater weight than are medical opinions from consultative sources, it is the ALJ's function to resolve conflicts among the medical opinions in the record. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). Here, the ALJ properly weighed the medical opinions in the record which included Dr. Robbins and Dr. Vogelsang and resolved the conflicts between these opinions. As set forth above, Dr. Robbins's opinion was inconsistent with her own treatment records and the record as a whole, and accordingly, the ALJ properly gave little weight to this opinion. The ALJ then considered the opinion of Dr. Vogelsang. The ALJ discussed Dr. Vogelsang's opinion as being that of an acceptable medical source who is a specialist and familiar with the social security rules and regulations regarding disability. Doc. 6, Administrative Record, pg. 23. Dr. Vogelsang reviewed Plaintiff's medical records just after he filed his application for disability. The records reviewed by Dr. Vogelsang included those of Dr. Robbins, including her objective x-rays and exams, and also the exam of Dr. Koreckij, the orthopedic specialist at Columbia Orthopedic Group, along with the MRI's that were conducted at the Columbia Orthopedic group.[2] The ALJ discussed that when reviewing these medical records and the record as a whole, Dr. Vogelsang's opinion, which included a detailed narrative, was widely consistent with Plaintiff's back and neck impairments, neuropathy and obesity, as well as the records indicating Plaintiff's conservative type

---

[2] The Court must "give greater weight to the opinion of a specialist about medical issues in the area of specialty." *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014).

11

treatment and limited objective findings. *Id.* at pg. 23. *See Pearsall v. Massanari*, 274 F.3d at 129 (ALJ did not err in giving greater weight to the opinion of non-treating physician because they were well supported by the objective testing and consistent with evidence in the record as a whole).

Plaintiff's argument that Dr. Vogelsang's review did not include records that were incurred after December 2012, while correct, does not change the relevance of Dr. Vogelsang's opinion. This is because, after December 2012, there were no additional objective medical testing or assessments done, and the medical treatment records of Plaintiff only included routine follow-up visits and medication management.

Plaintiff's argument that Dr. Vogelsang's opinion should not have been given great weight because it was a "projected" RFC and failed to consider all Plaintiff's impairments is without merit. First, the use of the word "projected" in Dr. Vogelsang's functional assessment is simply a reference that she was assessing Plaintiff's functional abilities from the alleged date of onset forward. The regulations require that a disability must be expected to continue for at least 12 months. 42 U.S.C. § 423(d)(1)(A) ("The term disability means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Moreover, the use of the word "projected" in no way undermines Dr. Vogelsang's assessment of what Plaintiff's ability to function was at the time of the assessment. Second, a medical opinion as to functional limitations is not discounted simply because the ALJ assessed additional severe impairments which were not considered by the doctor who gave the functional ability assessment. The Eighth Circuit has specifically stated that the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d at 927.

There is substantial evidence in the record to support the ALJ's decision to give great weight to Dr. Vogelsang's opinion and little weight to Dr. Robbins's opinion. The ALJ properly carried out his duty in weighing the conflicting medical opinions in the record.

**C. Substantial evidence in the record supports ALJ's Residual Functional Capacity Assessment (RFC).**

Plaintiff argues that the ALJ failed to properly support the RFC with sufficient medical evidence. The Court disagrees. The ALJ properly discussed the evidence in the record as a whole, including the medical opinion of Dr. Vogelsang and treatment records of Drs. Koreckij and

12

Robbins, that he used in making his determination that prior to December 31, 2014, Plaintiff had the RFC to do light work, with some additional limitations within that range to accommodate for his specific impairments as specifically set forth above. Doc. 6, Administrative Record, pgs. 21-26. Moreover, the ALJ's RFC need only be based on some medical evidence. It is ultimately the ALJ's duty to assess Plaintiff's functional abilities based on the evidence in the record as a whole, not just based on the medical records. *See Cox v. Astrue,* 495 F.3d 614, 618 ("in evaluating a claimant's RFC an ALJ is not limited to considering medical evidence exclusively."); *Guilliams v. Barnhart*, 393 F.3d 798 (8th Cir. 2005) ("RFC is a medical question and an ALJ's finding must be supported by some evidence. The ALJ, however, still bears the primary responsibility of assessing a claimant's residual functional capacity based on all the relevant evidence."). Finally, to the extent Plaintiff cites to medical evidence after Plaintiff's date of last insured of December 31, 2014, this evidence is not probative of Plaintiff's condition during the relevant time period. *See Rehder v. Apfel*, (8th Cir. 2000) (concluding that that psychologist's report completed 14 months after relevant time period was not probative of claimant's condition during the relevant period).

The ALJ made no error in the assessment of the evidence in the record as a whole, and there is substantial evidence to support the ALJ's RFC assessment, and corresponding determination that Plaintiff was not disabled as of December 31, 2014, as defined by the Social Security Act.

### III. CONCLUSION

For the reasons set forth above, this Court finds there is substantial evidence in the record to support the finding of the ALJ that Plaintiff was not under disability, as defined by the Social Security Act, at any time from June 20, 2012, the alleged disability onset date, through December 31, 2014, the date Plaintiff was last insured.

IT IS, THEREFORE, ORDERED that the decision of the Commissioner is affirmed.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 12, 2019
Jefferson City, Missouri